| | |
|---|---|
| SSC SERVICE CORP. d/b/a SSC SERVICE SOLUTIONS,<br><br>    **Plaintiff,**<br><br>  **v.**<br><br>EDWARD TUREN, NEAL TUREN, CONTROL TFS WEST, INC., CONTROL FACULTY SERVICES, LLC, CONTROL EQUITY GROUP, INC., JOHN DOES 1-10, and ABC/XYZ CORPS. 1-10,<br><br>    **Defendants.** | Civ. No. 2:15-cv-4160-KM-MAH<br><br>**OPINION** |

**MCNULTY, U.S.D.J.:**

  The plaintiff, Southeast Service Corporation ("SSC"), alleges that it entered into an oral settlement agreement on January 20, 2015 with defendants Edward Turen ("Edward"), Neal Turen ("Neal"), and three entities owned by Neal and Edward. Neal, however, argues that there was no agreement because the parties did not agree upon a material provision: whether Neal and Edward are jointly and severally liable for the settlement amount. Neal contends that he is liable for only 33% of the settlement amount; SSC argues that Neal and Edward are jointly and severally liable for the entire amount.

  Now before this Court are SSC's motion for summary judgment and Neal's cross-motion for summary judgment. For the reasons herein, the motions will be denied.

## I. Background[1]

### A. Introduction

SSC is a provider of facility management, landscaping, snow removal, custodial, housekeeping and janitorial services for educational facilities and

---

[1] For purposes of these motions, I consider Plaintiff SSC's statement of material facts ("PSMF") (ECF no. 46-3), Defendant Neal Turen's responsive statement of material facts ("DRSMF") (ECF no. 47-2 at 1-5), Defendant Neal Turen's additional statement of material facts ("DASMF") (ECF no. 47-2 at 5-7), Plaintiff SSC's response to Defendant's additional statement of material facts ("PRSMF") (ECF no. 51-1) pursuant to Local Rule 56.1, as well as the deposition testimony and documentary evidence. Facts not contested are assumed to be true.

Record items cited repeatedly will be abbreviated as follows:

Compl.= Complaint (ECF no. 1)

Lipman Cert. = Certification of Matthew A. Lipman (counsel for Plaintiff SSC) (ECF no. 46-2)

Di Iorio Decl. = Declaration of John P. Di Iorio (counsel for Defendant Neal Turen) (ECF no. 47-3)

Di Iorio Depo. = Portions of Deposition of John P. Di Iorio (ECF no. 46-2, Exh. C)

Neal Decl. = Declaration of Defendant Neal Turen (ECF no. 47-14)

Denbeaux Decl. = Declaration of Joshua W. Denbeaux (counsel for Defendants Edward Turen and the Control entities). A copy of the Denbeaux Declaration, previously submitted in 12-cv-5321, may be found in the record as Di Iorio Decl. Exh. A.

Settlement Agreement Draft 1= Draft of Settlement Agreement emailed from SSC's counsel to Edward's counsel and Neal's counsel on January 29, 2015 (Di Iorio Decl., Exh. B at 2-7)

Settlement Agreement Draft 2= Draft of Settlement Agreement emailed from Neal's counsel to SSC's counsel and Edward's counsel on February 9, 2015 (Di Iorio Decl., Exh. C at 3-9)

Settlement Agreement Draft 3= Draft of Settlement Agreement emailed from Neal's counsel to SSC's counsel and CC'ed to Edward's counsel on March 3, 2015 (Di Iorio Decl., Exh. D at 2-8).

Settlement Agreement Draft 4= Draft of Settlement Agreement emailed from Neal's counsel to SSC's counsel and Edward's counsel on April 1, 2015 (Di Iorio Decl., Exh. E at 2-8).

Pl. Br. = Plaintiff SSC's brief in support of summary judgment (ECF no. 46-1)

Def. Br. = Defendant Neal Turen's brief in opposition to plaintiff's motion and in support of his cross-motion (ECF no. 47-1)

Reply Br. = Plaintiff SSC's reply brief (ECF no. 51)

shopping centers throughout the United States. (PSMF ¶ 5). In March 2006, SSC entered into a contract with Control Facility Services, LLC ("Control Facility"). (*Id.* at ¶ 6). Pursuant to the contract, SSC agreed to act as a subcontractor to provide janitorial and housekeeping services at shopping centers owned by Macerich Partnership, L.P. (*Id.*) Thereafter, Control Facility assigned its right under the subcontract with SSC to Control TFS West, Inc. ("Control TFS"). (*Id.* at ¶ 7). SSC provided services to Control Facility and Control TFS for numerous years. (*Id.* at ¶ 8).

Edward and Neal Turen, who are brothers, are principals of Control TFS, Control Facility, and Control Equity Group, Inc. (collectively the "Control entities") (PSMF ¶ 1). Control Equity is the parent company of Control TFS. (*Id.* at ¶ 17). Edward is the majority shareholder of each of the Control entities and "generally" owns 67% of the equity in the entities, while Neal is a minority shareholder who "generally" owns 33% of the equity in the entities. (Di Iorio Decl. ¶ 2; Neal Decl. ¶ 2). According to SSC, the Turen brothers did not pay SSC money due under the contract, and instead diverted funds to themselves while rendering all of the Control entities insolvent. (PSMF ¶¶ 10-12).

This action is related to prior action, initially filed in New Jersey state court but removed to this Court.

### B. Previous Action- *Control TFS West, Inc. v. Southeast Serv. Corp.*, Docket No. 12-cv-5321

On July 13, 2012, Control TFS filed a complaint against SSC in the Superior Court of New Jersey, Hudson County, Law Division. (PSMF ¶ 2). *See* (Notice of Removal, Exh. A under 12-cv-5321). It asserted claims for tortious interference with prospective economic advantage and declaratory judgment. (*Id.*) On August 23, 2012, SSC removed the action to this Court: *Control TFS West, Inc. v. Southeast Serv. Corp.*, Docket No. 12-cv-5321. (PSMF ¶ 3). Neal and Edward were not parties to the action; Neal, however, was identified as an interested party.

On September 26, 2012, SSC filed an Answer with Affirmative Defenses, a counterclaim against Control TFS and third-party complaint against the two other Control entities (Control Facility and Control Equity). (PSMF ¶ 3). SSC's counterclaim/third-party complaint alleged the following claims:

> Count 1: Breach of Contract – Control TFS and/or Control Facility
>
> Count 2: Implied Contract/Unjust enrichment- Control TFS and/or Control Facility
>
> Count 3: Breach of the Duty of Good Faith and Fair Dealing – Control TFS and/or Control Facility
>
> Count 4: Promissory Estoppel- Control TFS and/or Control Facility
>
> Count 5: Constructive Trust- Control TFS, Control Facility, and Control Equity

(ECF no. 50 of 12-cv-5321 at ¶¶ 45-69); (PSMF ¶ 4). SSC alleged that the principal amount of $5,556,564.61, consisting of $3,049,501.16 in fees due for May and June, 2012 and $2,507,063.45 in improperly taken discounts, plus attorneys' fees, was due and owing from Control to SSC. (PSMF ¶ 12).

On October 10, 2014, Control and SSC filed a Stipulation, pursuant to which Control TFS agreed to dismiss all of its affirmative claims against SSC. (Id. at ¶ 14). The Stipulation re-positioned SSC as the plaintiff and the Control entities as defendants. (Id. at ¶ 15).

SSC now alleges that while conducting discovery in that case, it found evidence of fraudulent activities by Edward and Neal. In particular, SSC maintains that the evidence revealed that Edward and Neal diverted money to themselves rather than paying SSC and other known creditors. (Id. at ¶¶ 16-22). Based on their findings, SSC's attorneys began drafting a complaint against Edward and Neal as individuals. (Id. at ¶ 23).

On January 9, 2015, Magistrate Judge Steven C. Mannion held an in-person status conference with the named parties, SSC and the Control entities, and their respective counsel. After the conference, he issued a text order noting that the case had been settled: "The court has been notified verbally by both

parties that this case has been settled and that counsel will either file a consent judgment or stipulation of dismissal by 1/23/15. Note that Fed. R. Civ. P 41(a)(1)(A)9ii) requires that any stipulation of dismissal be signed by all parties." (ECF no. 49 of 12-cv-5321).

Based on that text order, this Court issued an order dismissing the case without costs and with prejudice, "subject to the right, upon good cause shown within sixty (60) days, to reopen the action if the settlement is not consummated." (ECF no. 50 of 12-cv-5321).

### C. January 20, 2015 Meeting

SSC's potential claims against the Turen brothers remained. In contemplation of settlement, SSC's counsel did not immediately file a complaint against the brothers. (PSMF ¶ 24).

At some point before January 20, 2015, Joshua W. Denbeaux, Esq., who represented the Control entities in 12-cv-5321 as well as Edward, contacted John Di Iorio, counsel for Neal. Edward's counsel[2] provided Neal's counsel with the factual background concerning the claims in the prior litigation involving SSC and the Control entities. (Di Iorio Decl. ¶ 6; Denbeaux Decl. ¶ 2). He also advised Neal's counsel that SSC was prepared to bring a new lawsuit against Neal and Edward. (Di Iorio Decl. ¶ 6; Denbeaux Decl. ¶ 2).

Following that discussion, on January 20, 2015, the following individuals met at the offices of SSC's counsel to discuss settlement: 1) a principal of SSC; 2) SSC's counsel, Matthew A. Lipman; 3) Edward (on behalf of himself and as principal for the Control entities); 4) Edward's counsel; 5) Neal; and 6) Neal's counsel. (PSMF ¶ 26; DRSMF ¶¶ 25-26; Denbeaux Decl. ¶ 2).

The parties offer differing versions of what occurred on January 20, 2015.

Counsel for SSC contends that after a full day of negotiations, "an [oral] agreement was reached to settle" the impending claims against the Turen

---

[2]     "Edward's counsel" refers to Mr. Denbeaux, who represented the Control entities as well. "Neal's counsel" refers to John P. Di Iorio, Esq.

brothers. (PSMF ¶ 27; Lipman Cert. ¶ 25). According to SSC, "[a]ll parties and their counsel agreed to the terms of the settlement and departed from the meeting after thanking one another for reaching an agreement and shaking hands." (PSMF ¶ 28; Lipman Cert. ¶ 25). Neal and his counsel, however, maintain that the parties only agreed to the total amount, $3,000,000, and timing of the payments to be made to SSC, and that a full settlement agreement was not reached. (Neal Decl. ¶ 10; Di Iorio Decl. ¶ 8). Edward's counsel corroborates this account; he states only that "the parties agreed to the amount and timing of the payments to be made to SSC." (Denbeaux Decl. ¶ 3).[3]

Neal claims that, during the day-long settlement meeting on January 20, 2015, SSC's counsel and its representative had a separate meeting with Edward and his counsel—without Neal. (DASMF ¶ 6). At this separate meeting, SSC allegedly stated to Edward that joint and several liability was a condition of the settlement. (*Id.* at ¶ 6). At the time, the substance of those discussions was not shared with Neal or his counsel. (*Id.*) Rather, Edward and Neal allegedly caucused in the presence of their respective attorneys—without representatives from SSC—and agreed between themselves that Neal would be responsible for 33% of the settlement payments, and Edward would be responsible for 67% of the payments. (*Id.* at ¶ 7; Di Iorio Decl. ¶ 13; Di Iorio Depo. 9:1-:25). At his deposition, Neal's counsel testified that the brothers agreed on those percentages because "that was their equity interest percentage generally speaking in by and large most of the Control entities." (Di Iorio Depo. 10:7-:9).

Edward, through counsel, recognizes that "[d]uring the settlement conference the parties met in a conference room and also spent time separated." (Denbeaux Decl. ¶ 5). Edward's counsel "spoke to Neal Turen and his counsel and [he] spoke to SSC and its counsel together, and separately." (*Id.*) He corroborates Neal's recollection and remembered "specifically

3     The Declaration of Edward's counsel had been originally submitted by Neal in opposition to SSC's motion to enforce the settlement. *See* (ECF no. 54-3 of 12-cv-5321).

discussing the terms of the agreement" in a room with the SSC representative and counsel for SSC. (*Id.* at ¶¶ 6, 7). Edward's counsel also recalled SSC "making joint and several liability a condition for the settlement." (*Id.* at ¶ 7). According to Edward's counsel, Edward "did not take a position as to whether joint and several liability was a requirement." (*Id.* at ¶ 8). After the separate meeting, they "returned to the conference room where SSC put the proposed settlement to Neal Turen and his counsel." (*Id.*) Edward's counsel states that the settlement agreement was not then put into writing, he did not take notes, and he did not have any recollection of whether the joint-and-several-liability term was discussed at the meeting amongst all the parties. (*Id.* at ¶ 9).

SSC concedes that at the January 20th meeting, the nature of the liability was not discussed among all of the parties and not discussed between SSC and Neal. (PRSMF ¶¶ 5-6). Neal and his counsel do not dispute this. In particular, Neal's counsel alleges that at no point during the meeting did all of the parties ever discuss, nor was it agreed by all of the parties, that the Control entities, Edward, and Neal would be jointly and severally liable for the payments due to SSC. (Di Iorio Decl. ¶ 11). *See* (Di Iorio Depo. 8:12-:16) (stating that he "believe[d] that certain terms of the agreement were discussed at that meeting and certain terms were not discussed at that meeting and to be amplified in written documents"). *See also* (*id.* at 8:20-:25). Neal similarly claims that the topic of how much of the payments he would be responsible for was never discussed in his presence among all the parties at the meeting, nor "were the words joint and several ever used" in his presence at the meeting. (Neal Decl. ¶ 11). He asserts that he "did not, and would not" agree to be jointly and severally liable. (*Id.* at ¶ 12).

### D. Events After January 20, 2015 Meeting

Nine days after the meeting, on January 29, 2015, SSC's counsel sent an email to Edward's counsel and Neal's counsel, attaching a "proposed settlement agreement for . . . review and comment." (Di Iorio Decl., Exh. B). The attached propose "Settlement Agreement" contained the following provision:

7

"Control, Edward and Neal, *jointly and severally,* agree to pay to SSC the total sum of Three Million Dollars ($3,000,000.00) (the "Settlement Payment") ...." (Settlement Agreement Draft 1 ¶ 1 (emphasis added)). This was the first time joint and several liability was explicitly raised with Neal or his counsel. (DASMF ¶ 10; Di Iorio Decl. ¶ 14; PRSMF ¶ 10).[4]

On February 9, 2015, Neal's counsel sent an email to SSC's counsel and Edward's counsel, attaching a redlined revision of the Settlement Agreement. (Di Iorio Decl., Exh. C). In this version, Neal's counsel deleted the phrase "jointly and severally" from the first paragraph. (Settlement Agreement Draft 2 ¶ 1) (showing a strikethrough horizontal line through the phrase "jointly and severally").[5] He also added this paragraph:

> e. Control and Edward are jointly and severally liable for 2/3 of the amount due SSC under this Agreement. Neal is severally liable for 1/3 of the amount due SSC under this Agreement. All payments made pursuant to this Agreement will be applied 2/3 to the amounts Control and Edward are responsible for and 1/3 to the amount Neal is responsible for pursuant to this Agreement.

(*Id.* at ¶ 1(e)).

According to Neal's counsel, at some unspecified time after he sent his email, SSC's counsel "followed up about revisions to the draft settlement agreement." (Di Iorio Decl. ¶ 16). Neal's counsel maintains that he advised SSC's counsel "that the issue of joint and several liability had not been discussed by SSC at the settlement meeting with Neal Turen, let alone agreed to, and that Neal Turen would not agree to be jointly and severally liable for the payments due." (*Id.*) He also "further advised" SSC's counsel that he would make changes to his proposed revisions to the settlement agreement. (*Id.*)

---

[4]     SSC admits that this was the first time joint and several liability was raised with Neal or his counsel. (PRSMF ¶ 10). However, SSC asserts that "joint and several liability was presumed . . . due to Neal Turen's failure to state any contrary intention." (*Id.*) *See also* (*id.* at ¶¶ 1, 11).

[5]     SSC recognizes that Neal objected to the joint-and-several-liability term when the written draft was circulated. (PRSMF ¶ 11). However, SSC asserts that "Neal Turen became jointly and severally liable to SSC as a matter of law when he failed to state any contrary intention at the time settlement was reached." (*Id.*)

Three weeks later, on March 2, 2015, Edward sent an email to SSC's counsel, with a copy to Neal himself (not Neal's counsel). (Di Iorio Decl., Exh. F). In the email, Edward asked: "Could you send Neal and me the wire instruction[s] so we can make the $40,000 payment today per agreement." (*Id.*)[6] Thereafter, SSC's counsel replied to Edward, with a copy to Edward's counsel and Neal, attaching instructions for wiring of funds. (*Id.*) Edward wired $26,800 (67% of the $40,000 payment) and Neal wired $13,200 (33% of the $40,000 payment) to SSC's counsel. (Di Iorio Decl. ¶ 21; Lipman Cert. ¶ 30).[7]

Neal's counsel attests that he was unaware of that wire transfer.[8] (Di Iorio Decl. ¶ 20). After Neal sent the wire transfer to SSC's counsel, later on that same day, Neal's counsel sent SSC's counsel an email stating as follows:

> I understand that the $40,000 installment due under the settlement agreement has been wired to your trust account. As you know, I made comments to the settlement agreement and there is no executed agreement. I will send you a further revised agreement tomorrow. I am also not sure if [Edward's counsel] has other comments. Please do not disburse the money you received until there is a signed settlement agreement.

---

[6]      The first and second drafts of the Settlement Agreement stated that a payment of $40,000 was due on March 2, 2015. (Settlement Agreement Draft 1 ¶ 1.a.; Settlement Agreement Draft 2 ¶ 1.a).

According to Neal's counsel, however, a $40,000 payment was due on March 1, 2015, not March 2, 2015, "based on the discussion at the meeting" and "[b]efore the terms of a settlement had been agreed." (Di Iorio Decl. ¶ 20).

[7]      SSC's counsel acknowledges in general terms that "[a] payment of $40,000 was made to SSC in accordance with the agreement." (Lipman Cert. ¶ 30).

According to Neal, he is responsible for 33% of the payments based on his discussions and agreement with Edward that he is severally liable for only 33% of each payment, while Edward is responsible for the remaining 67%. (DRSMF ¶ 36). Neal maintains that "instead of accepting" his offer to pay 33% of the settlement amount, SSC "rejected the offer by insisting that [Neal] was required to pay the entire amount." (Neal Decl. ¶ 16).

SSC and Neal acknowledge that no subsequent payments have been made to SSC. (PSMF ¶ 32; DRSMF ¶ 32).

[8]      This is corroborated by the March 2, 2015 email chain. *See* (Di Iorio Decl., Exh. F). Neal's counsel does not appear as a direct recipient, cc recipient, or bcc recipient of any of the emails.

(Di Iorio Decl., Exh. G).

The next day, on March 3, 2015, Neal's counsel emailed SSC's counsel and copied Edward's counsel with a redlined version of the Settlement Agreement. (Settlement Agreement Draft 3). This version of the agreement stated as follows: "In exchange for the mutual releases and other terms contained herein, Control, Edward and Neal, *in the proportionate amount set forth below, severally,* agree to pay to SSC the total sum of Three Million Dollars ($3,000,000.00) (the "Settlement Payment") . . ." (*Id.* at ¶ 1) (emphasis added; strikethrough language omitted). It further provided: "Control and Edward are jointly and severally liable for 2/3 of the payments due SSC under this Agreement. Neal is severally liable for 1/3 of the payments due SSC under this Agreement." (*Id.* at ¶1(d)) (strikethrough language omitted).

According to Neal's counsel, he did not hear back from SSC's counsel about those proposed revisions until a telephone conference held over three weeks later, on March 26, 2015. (Di Iorio Decl. ¶ 18). Neal's counsel claims that during that call, SSC's counsel contended that the language drafted by Neal's counsel did not reflect the parties' agreement regarding joint and several liability. (*Id.*) SSC's counsel then asked Neal's counsel to revise the language and "send it to him for consideration by his client." (*Id.*)

After that call, on that same date, SSC's counsel sent an email to Neal's counsel and Edward's counsel. (Di Iorio Decl., Exh. E). The salutation of the email identified Neal's counsel by his first name, and stated as follows:

> Following up on our conversation, please confirm by the close of business on Monday, March 30, 2015, that the obligation of the company and the brothers is joint and several. If not, we will proceed accordingly.
>
> I would request that you also consider this question that we did not discuss during our call: If the several obligation of Edward is 2/3 and the several obligation of Neal is 1/3, what are the several obligations of Control TFS West, Inc., Control Facility Services, LLC and Control Equity Group, Inc. which also are parties to the settlement agreement?

(*Id.*)

On April 1, 2015, Neal's counsel replied to the email and stated that, "in accordance with" his telephone conversation with SSC's counsel, he had "further revised" the Settlement Agreement. (*Id.*) He stated that the intent of his changes was to make Neal responsible for 1/3 of the amounts due and Edward and Control responsible for 2/3 of the payments. (*Id.*) He attached a copy of another redlined version of the Settlement Agreement, which stated as follows: "In exchange for the mutual releases and other terms contained herein, Control and Edward agree to pay 2/3 and Neal agrees to pay 1/3 of the amounts and on the dates set forth below." (Settlement Agreement Draft 4 ¶ 1).[9]

On May 29, 2015, SSC's counsel emailed Edward's counsel in reference to a $100,000 payment due on June 1, 2015: "As we discussed, it is my client's expectation that Ed and Neal Turen will make a payment in the combined amount of $100,000 by Monday. My client continues to maintain that the agreement was that there is a joint and several obligation on behalf of the Turens." (Di Iorio Decl., Exh. H)

Neal's counsel says that he received a copy of that email from Edward's counsel. (Di Iorio Decl. ¶ 24). Thereafter, Neal's counsel spoke to SSC's counsel and allegedly advised him "that the issue of joint and several liability was not discussed by SSC with Neal Turen at the settlement meeting and there was no meeting of the minds among SSC, Edward Turen, and Neal Turen concerning this material term, which had only been discussed between SSC and Edward Turen." (*Id.*)

---

[9]      Paragraph 1(d) was also amended and provided:

   d. Control and Edward are jointly and severally liable for 2/3 of *each of* the payments due SSC under this Agreement. Neal is severally liable for 1/3 of *each of* the payments due SSC under this Agreement.

(Settlement Agreement Draft 4 ¶ 1(d)) (emphasis added) (strikethrough language omitted).

**E. This Action- *Southeast Serv. Corp v. Edward Turen, Neal Turen, Control TFS West, Inc., Control Facility Services, LLC, Control Equity Group, Inc., John Does 1-10, & ABC/XYZ CORPS. 1-10,* Docket No. 15-cv-4160**

In short, although drafts of the written settlement agreement were exchanged between the parties, no written settlement agreement was ever signed. (DASMF ¶ 12; PRSMF ¶ 12). SSC now asserts claims against brothers Neal Turen and Edward Turen, as well as three Control entities. (PSMF ¶ 1). *Southeast Serv. Corp v. Edward Turen, Neal Turen, Control TFS West, Inc., Control Facility Services, LLC, Control Equity Group, Inc., John Does 1-10, & ABC/XYZ CORPS. 1-10,* Docket No. 15-cv-4160.

On June 18, 2015, SSC filed a complaint in this Court against Edward, Neal, the Control entities, John Does 1-10, and ABC/XYZ Corps. 1-10, asserting eight claims:

Count I- Breach of Contract

Count II- Piercing the Corporate Veil (Alter Ego Liability)

Count III- Piercing the Corporate Veil (Participation Theory Liability)

Count IV- Fraudulent Transfers under N.J.S.A. 25:2-25(a)

Count V- Fraudulent Transfers under N.J.S.A. 25:2-25(b)

Count VI- Fraudulent Transfers under N.J.S.A. 25:2-27(a)

Count VII- Breach of Fiduciary Duty

Count VIII- Unjust Enrichment

(Compl. ¶¶ 41-103).[10] Neal filed an Answer and Affirmative Defenses (ECF no. 16) on March 15, 2016, and Edward filed an Answer and Affirmative Defenses (ECF no. 23) on July 29, 2016.[11]

---

[10]    On that same date, under docket number 12-cv-5321, the previous litigation, SSC filed a motion to re-open the case and enforce the terms of the settlement agreement. (ECF no. 51 of 12-cv-5321). On March 4, 2016, this Court issued a Memorandum Opinion and Order denying the motion on jurisdictional grounds and deferring to this action. (ECF no. 58 of 12-cv-5321). Two weeks later, SSC filed a motion for reconsideration (ECF no. 59 of 12-cv-5321), which this Court denied on May 13, 2016. (ECF no. 61 of 12-cv-5321).

On February 2, 2018, SSC filed a motion for summary judgment on Count I—i.e., breach of contract regarding the purported Settlement Agreement.[12] On February 20, 2018, Neal filed papers in opposition, as well as a cross-motion for summary judgment on Count I. (ECF no. 47) On March 6, 2018, SSC filed an opposition to Neal's cross-motion and a reply in further support of its motion for summary judgment. The matter is therefore fully briefed and ripe for decision.[13]

### F. Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an

---

[11]    According to Neal's counsel, on March 22, 2017, his office served a request for production of documents on SSC's counsel and Edward's counsel. (Di Iorio Decl. ¶ 26). *See* (Di Iorio Decl., Exhs. I and J). Neal's counsel asserts that as of February 20, 2018, no documents had been produced in response to those demands. (Di Iorio Decl. ¶ 26). The Court will not address these issues. Discovery disputes may be directed to Magistrate Judge Michael A. Hammer.

[12]    SSC had previously filed a motion for summary judgment on March 6, 2017. (ECF no. 33). Magistrate Judge Hammer terminated that motion without prejudice to its re-filing if a January 22, 2018 settlement conference was unsuccessful. (ECF no. 43). The settlement conference was presumably unsuccessful, and Judge Hammer ordered SSC to refile its motion. (ECF no. 45).

[13]    Although the Control entities are defendants in this matter, no attorney has formally entered an appearance on their behalf. Nevertheless, the signature line in the Joint Discovery Plan (ECF no. 18 at 5) indicates that the Control entities are represented by Mr. Denbeaux, the attorney who also represents Edward in this matter. Moreover, the waivers of service for each Control entity were also signed by Denbeaux. (ECF nos. 8-10). I will permit the oversight, if that is what it was, to be remedied.

issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met the threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which the nonmoving party must rely to support its assertion that genuine issues of material fact exist). In deciding a motion for summary judgment, the court's role is not to evaluate and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

When the parties file cross-motions for summary judgment, the governing standard "does not change." *Auto–Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 401 (3d Cir. 2016) (citing *Appelmans v. City of Phila.*, 862 F.2d 214, 216 (3d Cir. 1987)). The court must consider the motions independently, in accordance with the principles outlined above. *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (D.N.J. 2009). That one of the cross-motions is denied does not imply that the other must be granted. For each motion, "the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made" but does not "weigh the evidence or make credibility determinations" because "these tasks

14

are left to the fact-finder." *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) (internal quotations and citations omitted).

## II. Discussion

State law (here, the law of New Jersey) governs the construction and enforcement of settlement agreements in federal court. *Langella v. Anderson*, 734 F. Supp. 185, 191–92 (D.N.J. 1990). "An agreement to settle litigation is 'governed by [the general] principles of contract law.'" *Globe Motor Co.*, 225 N.J. at 482 (quoting *Brundage v. Estate of Carambio,* 195 N.J. 575, 600–01 (2008)). It is "a contract which, like all other contracts, may be freely entered into, and which a court, absent a demonstration of 'fraud or other compelling circumstance' shall honor and enforce as it does other contracts." *Pascarella v. Bruck*, 190 N.J. Super. 118, 124–25 (App. Div. 1983) (quoting *Honeywell v. Bubb*, 130 N.J. Super. 130, 136 (App. Div. 1974)).

To prevail on a breach of contract claim, a party must prove (1) the existence of valid contract between the parties, (2) the opposing party's failure to perform a defined obligation under the contract, and (3) the breach caused the claimant to sustain damages. *EnviroFinance Grp., LLC v. Envtl. Barrier Co., LLC*, 440 N.J. Super. 325, 345 (App. Div. 2015) (citing *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007)). Here, Count I of the Complaint alleges that (1) a valid and enforceable oral settlement agreement was reached on January 20, 2015, (2) Edward, Neal, and the Control entities "breached the contract by reneging on their obligations under the Settlement Agreement after making only the initial payment of $40,000," and (3) SSC has suffered and continues to suffer economic injuries as a result of the breach. (Compl. ¶¶ 42-44). At issue on these summary judgment motions is element 1: whether a valid contract was formed between the parties.

Notwithstanding New Jersey's strong public policy in favor of settlements, *see Pascarella*, 190 N.J. Super. at 124, a settlement agreement must satisfy the requirements of a contract in order to be binding and enforceable. "The burden to prove a settlement agreement is borne by the party

seeking to enforce it." *Ed-Gel, LLC v. KRS Global Biotechnology, Inc.*, No. A-4758-16T3, 2018 WL 3848391, at *2 (App. Div. Aug. 14, 2018) (citing *Amatuzzo v. Kozmiuk*, 305 N.J. Super. 469, 475 (App. Div. 1997)). It is not fatal that the agreement was oral, or that it left some details unsettled. *See Pascarella*, 190 N.J. Super. at 124. If the parties agree upon the essential terms of a settlement, leaving the details to be "fleshed out" in a writing thereafter, courts will enforce settlement agreements notwithstanding the absence of a future writing. *Lahue v. Pio Costa,* 263 N.J. Super. 575, 596 (App. Div. 1993) (citing *Bistricer v. Bistricer,* 231 N.J. Super. 143, 145 (Ch. Div. 1987)). *See Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970) (recognizing that "[a]n agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing").

For a contract to exist, however, the parties must manifest a mutual intent to engage in an offer and acceptance of sufficiently definite essential terms. *Weichert Co. Realtors v. Ryan,* 128 N.J. 427, 435 (1992) (citations omitted). *See Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank,* 163 N.J. Super. 463, 474 (App. Div. 1978) (noting there is no contract when the agreement is "so deficient in the specification of its essential terms that the performance by each party cannot be ascertained with reasonable certainty[.]"), *certif. denied,* 79 N.J. 488 (1979); *Krill v. IDT Corp., Inc.*, No. A-5664-14T3, 2017 WL 3091799, at *6 (App. Div. July 21, 2017) (citing *Weichert Co. Realtors,* 128 N.J. at 435) ("An oral contract requires a meeting of the minds, offer and acceptance, consideration, and sufficiently defined terms.").[14]

SSC argues that summary judgment should be granted in its favor on its breach-of-contract claim. First, it asserts that on January 20, 2015, a valid and binding settlement agreement was formed. (Pl. Br. 12). SSC maintains that

---

[14]     To be enforceable, a contract must also be accompanied by consideration. *Excelsior Ins. Co. v. Pennsbury Pain Center,* 975 F. Supp. 342, 349 (D.N.J. 1996). It is too well settled to require citation, however, that a counter-promise may serve as consideration.

at the meeting, there was a meeting of the minds regarding all of the essential terms of the agreement including "definite payment terms." (*Id.* at 15). The terms of that agreement, says SSC, were incorporated in the written agreement that SSC's counsel e-mailed to Neal's counsel on January 29, 2015, the version which states that the Control entities, Edward, and Neal are jointly and severally liable. (*Id.* at 15-16 (citing Lipman Cert., Exh. A. *See* Settlement Agreement Draft 1.))[15]

Second, according to SSC, because neither Neal nor his counsel used explicit "words of severance," Neal's contractual obligation to SSC (i.e. the oral settlement agreement) is presumed to be a joint obligation. (*Id.* at 2-3, 17-21 (citing *Alpaugh v. Wood*, 53 N.J.L. 638, 644 (1891). *See* Pl. Reply 2-3, 6.).)

Third, SSC asserts that there is a judicial presumption of joint liability, and that the agreement reached by the parties on January 20, 2015 included "all of the terms essential to produce a complete transaction." (*Id.* at 22 (citing *Straus Assocs. II v. Berman*, No. A-5578-15T3, 2017 WL 4781699, at *1 (App. Div. Oct. 24, 2017)).

Thus, says SSC, there is no genuine dispute as to any material fact. It urges this Court to grant its summary judgment motion and enforce the settlement agreement.[16] (*Id.* at 25).

---

[15]    SSC also points out that "[f]ive of the six parties to the settlement agreement are in agreement regarding its terms. . . SSC, Control TFS, Control Equity, Control Facility and Edward Turen all agree that the parties reached an agreement, and specifically, that the Turen brothers agreed to be jointly and severally liable for the debt." (Pl. Br. 9). *See* (*id.* at 16). Five out of six is not bad, but here, the sixth party is Neal, the one sought to be bound.

   In support of this assertion, by the way, SSC points to "Answer of Control TFS, Control Equity, Control Facility and Edward Turen." (*Id.* at 9. *See* ECF No. 23 at ¶¶ 37-38) (admitting that a settlement was reached on January 20, 2015 and that the initial written agreement sets forth the material terms of the agreement). That Answer, however, seems to have been filed on behalf of Edward, not the three Control entities. (*See* ECF No. 23 at 1 ("Defendant Edward Turen, of full age, hereby Answers the Plaintiff's Complaint . . . "). Again, if this was an oversight, I will permit it to be remedied. *See* n.13, *supra*.

[16]    Where the court has retained jurisdiction, the issues may be presented in the form of a motion to enforce a settlement agreement. Before this Court is a motion for summary judgment on a breach-of-contract claim. The two, however, are essentially

17

Neal responds that the Court should deny the motion for summary judgment and grant his cross-motion for summary judgment because a settlement agreement was never formed. Specifically, Neal argues that "as there is no genuine dispute that the parties failed to reach an agreement on a term they both deemed material [*i.e.,* joint or several liability], there is no enforceable settlement" and he is therefore entitled to judgment as matter of law. (Def. Br. 1).

Neal asserts that he "did not, and would not, agree to be jointly and severally liable for the amounts due as he had no involvement with the SSC account or payment of the amounts allegedly due to SSC." (Def. Br. at 5). Neal also points to the explicit discussion between SSC and Edward regarding joint and several liability as evidence that SSC deemed that term material. (*Id.* at 10, 12-14). Moreover, Neal contends that the parties' conduct after the meeting, in particular the "time and effort" spent by SSC's counsel and Neal's counsel in addressing the term in drafts of the settlement agreement, further establishes the materiality of the term. (*Id.* at 15).[17]

---

equivalent: "The stakes in summary enforcement of a settlement agreement and summary judgment on the merits of a claim are roughly the same—both deprive a party of his right to be heard in the litigation." *Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir. 1991). *See Natale v. E. Coast Salon Servs., Inc.*, No. CV 13-1254 (NLH/JS), 2016 WL 659722, at *2 (D.N.J. Feb. 18, 2016) (citing *Washington v. Klem*, 388 F. App'x 84, 85 (3d Cir. 2010) ) ("Courts treat a motion to enforce settlement under the same standard as a motion for summary judgment because the central issue is whether there is any disputed issue of material fact as to the validity of the settlement agreement.").

[17]    In the alternative, SSC seeks to hold Neal and Edward liable as guarantors of the Control entities' obligations. Neal asserts that under New Jersey's Statute of Frauds, any such agreement must be writing, and that there is no such written agreement. (Def. Br. at 17) (citing N.J.S.A. 25:1-15).

SSC cites exceptions to the Statute of Frauds. Neal, it says, entered into the settlement agreement, not for the benefit of the Control entities, but for his own personal benefit, to avoid future litigation against him. (Pl. Reply 8) (citing *Howard M. Schoor Assocs., Inc. v. Holmdel Heights Const. Co.*, 68 N.J. 95, 102 (1975) (citing 2 Corbin on Contracts § 366, at 273-74 (1950)). Furthermore, because the settlement agreement is an original promise rather than a collateral promise, it does not have to be in writing. (*Id.* at 9-10) (citing *City Nat. Bank & Tr. Co. of Salem v. Hassler*, 9 N.J. Super. 153, 157 (App. Div. 1950)).

Here, there is an obvious issue of fact as to contract formation and the essential terms. "[W]hether a valid oral contract was made or whether oral agreements were intended not to bind the parties until a written contract was executed, is solely a matter of intent determined in large part by a credibility evaluation of witnesses." *McBarron v. Kipling Woods L.L.C.*, 365 N.J. Super. 114, 117 (App. Div. 2004). *See McDonnell v. Engine Distributors*, 314 F. App'x 509, 511 (3d Cir. 2009) (citing *Burlew v. Hepps*, 6 N.J. Super. 16, 19 (App. Div. 1949) ) ("The formation of an enforceable contract is a question of fact"); *American Lumber & Mfg. v. Atlantic Mill & Lumber Co.*, 290 F. 632, 634 (3d Cir. 1923) (recognizing that "[w]hen the evidence is conflicting it is for the jury to determine whether a contract does in fact exist, and, if so, what are its terms?"); *Schecter v. Schecter*, No. 07-419, 2008 WL 5054343, at *4 (D.N.J. Nov. 26, 2008) ("The Court will not grant summary judgment when there is a material issue of fact as to whether an enforceable oral contract exists in the first place.").

I find that neither side has met its burden to demonstrate the lack of a genuine, material issue of fact for purposes of summary judgment.

First, I find that the issue of joint vs. several liability is a material one. Liability for one third vs. two thirds vs. the entirety of the settlement amount represents the difference between $1 million, $2 million, or $3 million. The parties' discussions also tend to corroborate that they regarded it as material. The issue may not be quite as fundamental as the price in a simple contract of sale, but it is perhaps in the same league.

Second, there is a factual dispute as to whether the parties agreed as to joint vs. several liability. It is true, of course, that "so long as the parties agree upon the essential terms of a settlement, leaving the details to be 'fleshed out' in a writing thereafter, courts will enforce settlement agreements notwithstanding the absence of a future writing." *Bowles v. New York Liberty,*

---

All of the Statute of Frauds issues, however, beg the same issue: whether there was any agreement, whether written or oral.

No. CIV.A. 11-3529 ES, 2014 WL 7148916, at *2 (D.N.J. Dec. 15, 2014) (quoting *Lahue v. Pio Costa*, 263 N.J. Super. 575, 596, 623 A.2d 775 (App. Div. 1993)). Here, however, the parties agree that the nature of the liability was never discussed at the January 20th meeting among all of the parties (although Neal claims, over Edward's objection, that the two of them separately discussed a division of liability).

SSC attempts to remedy the deficiency by invoking a legal presumption of joint and several liability. Neal, it says, should be deemed to have agreed to joint and several liability because he failed to disclaim it. The evidence here, however, prevents me from resting on any such presumption. Neal states that he never would have agreed to such a term, which was harmful to him and disproportionate to his interest and involvement. Nor is this a case of belated contractor's remorse. SSC's first email attaching a draft formalizing the settlement agreement contained a provision imposing joint and several liability. Neal's counsel responded with a draft that struck that provision out, and he stuck to that position in subsequent drafts. Nor did Neal's conduct ratify any such understanding; he sent a check for what he regarded as his several share of the first instalment. More generally, a factual question may remain as to whether the parties intended to be bound by an oral agreement or, rather, whether it was their expectation that no binding contract would exist until a written settlement agreement had been reviewed, agreed to and executed by the parties.

Denial of both sides' summary judgment motions is regrettable, but required. The court cannot compel any party to settle, and there is no such thing as a one-sided settlement agreement. I do not say that any party has trifled with the court; mere oversight may be to blame. Nevertheless, the parties are urged to focus their future efforts on a global resolution of the merits of the underlying dispute, not collateral issues.

### III. Conclusion

For the reasons set forth above, SSC's motion for summary judgment (ECF no. 46) is denied and Neal's cross-motion for summary judgment (ECF no. 47) is likewise denied.

Dated: August 27, 2018

**HON. KEVIN MCNULTY, U.S.D.J.**